J-S26023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DAVIS L. JOSEPHUS | : | |
| | : | |
| Appellant | : | |
| | : | |
| | : | No. 2655 EDA 2022 |

Appeal from the Judgment of Sentence Entered August 26, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004200-2021

BEFORE:  STABILE, J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED SEPTEMBER 12, 2023**

Josephus Davis[1] appeals from the judgment of sentence entered after a jury convicted him of murder of the second degree and other offenses.[2] We affirm.

On January 13, 2021, Davis was arrested and charged in connection with the shooting death of Milan Loncar. The case proceeded to a jury trial beginning on June 22, 2022. The trial court summarized the evidence at trial:

> On January 13, 2021, [Davis] robbed and killed the [25-year-old decedent, who] was walking his dog. At approximately 6:53 p.m., [Davis], his co-conspirator, and the decedent all converged at the intersection of 31st Street and Jefferson Street

---

[1] The appellant stated that his name is "Josephus Davis, but in the system it's backwards." N.T., 5/20/22, at 5. We use his preferred name in the body of this opinion but keep the case caption consistent with the trial court docket.

[2] 18 Pa.C.S.A. §§ 2502(b), 903(c) (conspiracy to commit murder), 3701(a)(1)(i) (robbery), 6106(a)(1) (carrying a firearm without a license), and 907(a) (possessing an instrument of crime).

in Philadelphia. After turning right on Jefferson Street and seeing [Davis] and his co-conspirator walking towards him, the decedent attempted to keep to the left; however, [Davis] veered to the left forcing the decedent to walk between the two co-conspirators. [Davis] pulled his gun from his jacket pocket, points it at the decedent's chest, and both men began searching through the decedent's pockets. As the decedent jerked away, [Davis] shot him at point blank range. Both men immediately fled the scene.

As the decedent attempted to use his cellphone, he collapsed on the sidewalk, suffering from one perforating gunshot wound to the chest. Approximately four minutes later, police officers responded to the scene and rush the decedent to Temple Hospital, where he died a half-an-hour later.

Video surveillance captured both the incident and [the conspirators'] flight to [Davis'] home. [Davis] and his co-conspirator ran south on 31st Street, across the parking lot of the Pointe, an apartment building at 1415 North 31st Street, and climbed a fence to reach an alleyway that ends on Master Street. Surveillance footage from the 30th Street Mini Market at 1400 North 30th Street and four private residences showed the co-conspirators exiting the alleyway and walking east on Master Street, until eventually turning left and walking north on Hollywood Street out of camera view.

About [15 ]minutes later, at 7:13 p.m., video surveillance showed the co-conspirators walking south on Hollywood Street towards [Davis'] residence at 1446 Hollywood Street, three houses south from the camera. [Davis] looked at his phone and said, "Just say you outside . . . nothing wrong with saying you outside." [Davis] asked his mother, who was off camera, "What did you say mom?" [Davis'] mother replied, "I didn't say s[—], what you doing?" [Davis] said "I'm waiting for my ride" as he walked off-camera towards his home with his co-conspirator. After about twenty seconds, [Davis] could be heard saying "just stay right there" before he and his co-conspirator walk north on Hollywood [S]treet, turn right onto Jefferson Street, and get into the backseat of a waiting silver Ford Focus on 29th and Jefferson Street.

Approximately an hour [and] a half later, police attempted to pull over the silver Ford Focus on the 1800 block of Hart Lane because the vehicle was reported stolen the night before. Once the officer activated his car's lights and sirens, a chase ensued for

- 2 -

approximately three fourths of a mile with the officer losing sight of the vehicle around D Street and Indiana Avenue.

After receiving information about the vehicle over police radio, Highway Patrol Officer James Boone saw the vehicle parked at B Street and Indiana Avenue and observed three men flee from the vehicle. Approximately five minutes later, [Davis] was secured by another officer at the 200 block of Indiana Avenue and Officer Boone identified [him as one of the men who had fled].

When he was arrested, [Davis] wore clothing consistent with the shooter on the surveillance video: gray, white, and red Balenciaga sneakers, black jeans with a bedazzled belt, a dark blue hooded jacket, a gray zip-up jacket, and a white t-shirt. One particle of gunshot residue was found on the left sleeve of [Davis'] gray zip-up jacket. [Davis] provided an alias [Joseph Daniels] and an incorrect date of birth to the officers.

From the scene [of the shooting], police recovered one fired cartridge casing ("FCC"), one 9mm projectile, and two matching bullet fragments. The FCC matched a black and tan Polymer80 handgun with no serial number, which was recovered by police in an unrelated incident [five months later], on May 20, 2021.

Trial Court Opinion, 12/6/22, at 2–4 (record citations omitted, tense altered).

On June 24, 2022, the jury found Davis guilty of the above counts. On August 26, 2022, the trial court sentenced Davis to an aggregate term of life imprisonment. Davis filed a timely post-sentence motion, which the trial court denied on September 21, 2022. Davis timely appealed. Davis and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Davis presents two questions for review:

I.   Was the evidence sufficient to sustain [Davis'] conviction at all counts?

II.  Were the verdicts for all counts against the clear weight of the evidence?

Davis' Brief at 4.

Davis' first issue is a challenge to the sufficiency of the evidence. While he concedes that the evidence at trial was sufficient to prove that the crimes occurred, he maintains that the evidence was insufficient to identify him as the perpetrator. Davis emphasizes the lack of eyewitnesses, direct testimony, DNA, and fingerprints. He argues that the surveillance video (which did not show the perpetrator's face) and the gunshot residue test (which found one particle on his sleeve) did not meet the burden of proving his identity.

The following well-settled principles frame this Court's review of an issue challenging evidentiary sufficiency:

> The standard we apply in reviewing the sufficiency of the evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying this test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

*Commonwealth v. Dixon*, 276 A.3d 794, 800 (Pa. Super. 2022) (quoting *Commonwealth v. Walsh*, 36 A.3d 613, 618–19 (Pa. Super. 2012)) (brackets omitted).

At trial, the Commonwealth bears the burden of proving the defendant's identity as the perpetrator. "Evidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator." **Commonwealth v. Edwards**, 229 A.3d 298, 306 (Pa. Super. 2020) (quoting **Commonwealth v. Kinney**, 157 A.3d 968, 971 (Pa. Super. 2017)). Distinctive clothes can be circumstantial evidence of identity. **See, e.g.**, **Commonwealth v. Hobel**, 275 A.3d 1049, 1070–71 (Pa. Super. 2022) (finding sufficient evidence of identity based in part on the defendant having the same distinctive clothing as the robber as seen on surveillance video).

Here, the Commonwealth produced surveillance video showing the two co-conspirators shooting the victim, running away, and climbing over a fence. Notably, the different camera angles consistently depict the distinctive shoes that the shooter was wearing, as well as a specific pattern of metal buttons and a shoulder patch on his jacket. These are all consistent with what Davis was wearing when he was talking outside his house fifteen minutes later and when he was arrested two hours later. It was reasonable for the jury to infer from Davis' unique clothing that he was the perpetrator. That the co-conspirators were wearing masks, resulting in the videos not showing their faces, does not negate the remaining evidence of distinctive clothing. Rather, the jury could weigh this evidence of Davis' identity. Because the evidence

- 5 -

was sufficient for the jury to infer that Davis was the perpetrator, his first issue fails.

Davis' second issue is a challenge to the weight of the evidence. As above, Davis contests the evidence that he was the perpetrator. He argues that the jury's verdict was against the weight of the evidence, which "merely" consisted of surveillance footage in which the perpetrator wore a mask and a gunshot residue test that showed a single particle on his sleeve. Davis preserved his weight issue in his post-sentence for a new trial.

> We are guided by a well-settled set of precepts when addressing a weight-of-the-evidence claim. First, we note that the weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of witnesses. Second, a verdict will only be reversed on this basis where the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the [trial] court. Third, the fact-finder is charged with the responsibility to resolve contradictory testimony and questions of credibility, and we may not substitute our judgment in place of the fact-finder.
>
> A motion for a new trial based on a weight-of-the-evidence claim, like what happened in this case, is addressed to the discretion of the trial court, and therefore, we review only the [trial] court's exercise of discretion and not the underlying question of whether the verdict is against the weight of the evidence. When reviewing a trial court's determination on a weight claim, we give the gravest consideration to the findings and reasons advanced by the trial judge because it is the trial judge, not the appellate court, who had the opportunity to see and hear the evidence presented.

***Commonwealth v. Fuentes***, 272 A.3d 511, 516 (Pa. Super. 2022) (citations and quotation marks omitted).

Here, the trial court explained that the jury's verdict did not shock the trial court's sense of justice. Trial Court Opinion, 12/6/22, at 7. The court addressed the severity of the crimes and Davis' identity as a perpetrator:

> [Davis] killed the decedent by shooting him at close range after he and his co-conspirator robbed the decedent at gunpoint. [Davis'] distinctive clothing, weight, and height are consistent with the shooter seen on the surveillance video. The co-conspirators fled back to [Davis'] home, and [Davis] even had a conversation with his mother before the co-conspirators got into a silver Ford Focus together. Less than two hours after the incident, [Davis] was arrested fleeing from a vehicle which was the same make, model, and color as the vehicle on the surveillance footage. Accordingly, [Davis'] claim that his conviction is against the weight of the evidence fails.

*Id.* at 7–8 (tense altered).

We find no abuse of discretion. The trial court assessed the evidence in light of the jury's verdict and found that the verdict did not shock its sense of justice. Davis has not shown how this determination represents an abuse of discretion. Accordingly, we affirm Davis' judgment of sentence.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2023

- 7 -