J-S36041-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RONALD WILLIAM TUCKER | : | |
| | : | |
| Appellant | : | No. 2754 EDA 2022 |

Appeal from the Judgment of Sentence Entered May 20, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005079-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RONALD WILLIAM TUCKER | : | |
| | : | |
| Appellant | : | No. 2755 EDA 2022 |

Appeal from the Judgment of Sentence Entered May 20, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005080-2019

BEFORE: BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED OCTOBER 27, 2023**

Appellant, Ronald William Tucker, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for attempted rape of a child, unlawful contact with a minor, indecent assault of a person less than 13 years old, possession of an

instrument of crime, and simple assault.[1]  We affirm.

In its opinion, the trial court set forth the relevant facts and procedural

history of this case as follows:

> During the [jury] trial, seven witnesses testified. Complainant, [D.G.], testified that on the morning of July 2, 2019[,] she rode her bike to the corner store at 16th and Clearfield streets to purchase a popsicle.  [D.G.] testified that upon leaving the store she began to ride her bike in the area of the store and across the street at the park.  [D.G.'s] testimony is that while riding her bike, Appellant begins to converse with her from his parked car.  [D.G.] further testified that moments following this brief interaction, she resumes riding her bike and returns to the park.  [D.G.] then testified that once inside the park she got off her bike to fix the seat.  Thereafter, [D.G.] testified that as she was preparing to get back on her bike[,] Appellant pushed her bike and put her [against] the wall.  [D.G.] testified that Appellant then attempted to touch her breasts and pull her pants down to touch her vagina with his fingers while simultaneously touching and masturbating his penis inside his unbuckled pants and stating, "tell me how big it is."  [D.G.] then testified that Nicholas Adams (hereinafter "Adams") walked into the park [and] immediately observed the interaction and pushed Appellant.  [D.G.'s] testimony is that Appellant then pulled a knife and began to swing the knife at Adams.  [D.G.] testified that as Appellant and Adams were fighting, she was scared and crying and therefore did not run away.  [D.G.] then testified that Appellant ran away from the park and got into his parked car.
>
> Next, witness Adams testified that on July 2, 2019[,] he was walking towards the basketball court when he observed an "older guy" with his pants down to his knees and buttocks visible along with a little girl who he quickly recognized as the child of an acquaintance.  Adams testified that the complainant appeared to be "in a daze," crying and her eyes

---

[1] 18 Pa.C.S.A. §§ 901(a) (section 3121(c) related); 6318(a)(1); 3126(a)(7); 907(a); and 2701(a), respectively.

were big. Adams testified that his presence startled Appellant, causing Appellant to turn toward Adams, at which time Appellant's erect penis was visible. Adams testified that he then approached Appellant with his hands drawn and in a fighting stance and Appellant responded by pulling out a knife and lunging at him. Adams further testified that after Appellant made several attempts to stab him with the knife, Appellant abandoned his efforts and ran to his car. Thereafter, Adams testified that he chased behind Appellant and as Appellant was reversing out of the parking spot, Adams was able to obtain the vehicle's license plate. Adams' testimony is that he then called the police and the complainant's stepfather. Adams testified that shortly thereafter the police arrived and escorted him to the 1800 block of Erie Avenue where he positively identified Appellant.

Police Officer Robert Hopkins (hereinafter "Officer Hopkins") testified that on July 2, 2019[,] he was on patrol in the 39th Police District when he received a radio call for a rape in progress. Officer Hopkins testified that he arrived at the 1500 block of Clearfield street and was approached by a distraught Adams and the complainant who appeared to be in shock and "a little shaken up." Officer Hopkins testified that he then gathered information from the witnesses regarding the details of the crime, the description of the perpetrator, and where the crime took place. Officer Hopkins testified that he then provided flash information about the description of the perpetrator over police radio. Thereafter, Officer Hopkins testified that the complainant disclosed that she was riding her bike in the park when Appellant approached her, pushed her bike up against the wall and began to pull his pants down. Officer Hopkins further testified that the complainant further explained that Adams then walked into the park and approached Appellant who then pulled a knife and began to lunge at Adams. Further, Officer Hopkins testified that the complainant also stated that Appellant asked if she liked the size of his genitals. Officer Hopkins testified that based on the information obtained from the complainant he then completed a [Form] 7548.

Next, Police Officer Jonathan Switaj (hereinafter "Officer Switaj") testified that on July 2, 2019[,] he was working with

a team in the 39th Police District when he responded to a call at the 1500 block of Clearfield Street. Officer Switaj testified that when he arrived on location other police officers were present and crime scene tape was erected. Officer Switaj testified that he was familiar with the area and had knowledge of video surveillance cameras at the convenience store. Officer Switaj testified that he then went to the convenience store to obtain footage of the crime. Officer Switaj testified that on the video surveillance footage he observed the complainant on a bicycle riding up and down the street and speaking to Appellant in his vehicle. Further, Officer Switaj testified that he transmitted information obtained from the surveillance video over police radio to officers surveying the area for Appellant's vehicle.

The next witness to testify was Detective Jane Costello (hereinafter "Detective Costello") of the Special Victims Unit (hereinafter "SVU"). Detective Costello testified that on July 2, 2019[,] she was assigned to investigate an attempted rape perpetrated by Appellant at the 1500 block of Clearfield Street. Detective Costello testified that she advised the officers at the scene to preserve the scene. Detective Costello further testified that she observed [D.G.'s] interview at Philadelphia Children Alliance (hereinafter "PCA") on closed circuit television in a separate room. Additionally, Adams was interviewed by Detective Costello's partner at SVU. Detective Costello testified that following the interviews she went out to the scene at the 1500 block of Clearfield Street and documented the scene by taking photos and visiting the corner store to view and save the video surveillance. Detective Costello testified that she returned to her office to prepare a search warrant for Appellant's vehicle. Detective Costello testified that upon searching Appellant's vehicle a green box cutter and one vehicle's owner's registration card was recovered.

Next, Colleen Getz (hereinafter "Getz") a PCA employee testified [D.G.] was accompanied to PCA by her mother for a forensic interview. Getz testified that the interview with [D.G.] was recorded and a written report was completed. Getz testified that to ensure [D.G.] could speak freely about her experience without any pressure or concerns, her mother remained in a separate room with a family advocate while the interview was being conducted.

Last, Police Officer Clayton Baker (hereinafter "Officer Baker") testified that on July 2, 2019[,] he was assigned to the 39th Police District when he received a radio call of a rape in progress at the 1500 block of Clearfield Street. According to Officer Baker's testimony there was a "flash" of a description for a vehicle and the description of a [b]lack male with a gray shirt and blue jeans. Officer Baker testified that his partner and himself were surveilling in the area at 1900 Venango Street for a tan Buick with a license plate containing the first three letters "KXS" when they observed a vehicle that matched the "flash" at the 1800 block of Venango. Officer Baker continued to testify that they stopped the vehicle at the 1900 block of Venango and approached to find Appellant. Officer Baker testified that he observed Appellant was nervous, sweating profusely and he saw a green box cutter on the rear seat. Officer Baker testified that he asked for the witness from the rape scene to be brought over to the 1800 block of Venango to identify Appellant. Officer Baker testified that the witness arrived at the car stop and made a positive identification of Appellant.

Following all this testimony, the jury found Appellant guilty [on February 4, 2022,] of criminal attempt—rape of a child, unlawful contact with a minor—sexual offense, indecent assault of a person less than 13, possession of an instrument of crime, and simple assault. Subsequently, the trial court sentenced [Appellant] on May 20, 2022 [to an aggregate term of 11-22 years' imprisonment. On May 25, 2022, Appellant filed a timely post-sentence motion at each underlying docket number. The clerk of courts entered an order denying the post-sentence motions by operation of law on September 29, 2022.] On October 26, 2022, Appellant filed [separate] notice[s] of appeal with the Superior Court [at each underlying docket, which this Court later consolidated *sua sponte*[2]]. On December 1[6], 2022,

_____

[2] According to Pa.R.Crim.P. 720(B)(3)(a), a trial court must decide a post-sentence motion within 120 days of filing; otherwise, it is deemed denied by operation of law (absent the grant of any extension). Here, the 120th day was September 22, 2022. This Court has previously held that a breakdown occurs when the clerk of courts fails to enter an order deeming a post-sentence

*(Footnote Continued Next Page)*

this [c]ourt issued an Order pursuant to Rule 1925(b) instructing Appellant to file a statement of [errors] complained of on appeal. On January 2, 2023, a statement of errors complained of on appeal was filed.

(Trial Court Opinion, filed 1/9/23, at 2-7) (internal citations and footnotes omitted).

Appellant raises one issue for our review:

Is the verdict of guilty with respect to all charges against the weight of the evidence and so contrary to the evidence that it shocks one's sense of justice?

(Appellant's Brief at 6).

Appellant argues there was no physical or forensic evidence linking him to the crimes. Appellant asserts that neither D.G. nor Adams suffered any injuries despite their claims that Appellant held a knife to D.G.'s neck and attempted to stab Adams. Appellant claims that D.G. conceded at trial that her statement during the forensic interview that Appellant followed her into the park was untrue. Appellant maintains the surveillance video shows that D.G. rode her bike into the park a few yards behind Appellant. Appellant highlights that D.G. said in her interview that she was fearful of older men, but the surveillance video shows her speaking to Appellant several times on

_____

motion denied by operation of law. *See, e.g., Commonwealth v. Perry*, 820 A.2d 734 (Pa.Super. 2003). When a trial court denies the post-sentence motion beyond the 120-day period and the appellant files a notice of appeal within 30 days of that order, the notice of appeal is considered timely. *See id.* Because Appellant filed notices of appeal at each underlying docket within 30 days of the September 29, 2022 order denying the post-sentence motions by operation of law, the appeals are timely.

the morning in question. Appellant emphasizes that D.G. admitted that Appellant did not pull a knife until after Adams began punching him, but Adams testified that Appellant already had a knife in his hand when Adams punched Appellant. Appellant contends that D.G. never yelled for help despite the alleged assault occurring in public in the middle of the day. Appellant submits that police did not photograph or observe any bricks near the crime scene, which is inconsistent with testimony of Adams that Adams threw bricks at Appellant. Appellant emphasizes that police did not recover a knife in his vehicle. Appellant admits that police recovered a box cutter from his vehicle, but he points out that no one accused him of using a box cutter in the incident. Appellant maintains that the evidence presented is "inconsistent, implausible, and irreconcilable." (*Id.* at 29). Appellant avers that he could not have assaulted D.G. in the manner she described while simultaneously holding a knife to her neck as Adams stated. Appellant submits that the video did not show Adams dribbling a basketball when he walked into the park, which is inconsistent with testimony from Adams. Appellant highlights that Adams "inexplicitly" waited more than three minutes to call 911. (*Id.* at 31). Appellant concludes the verdict was against the weight of the evidence on all convictions, and this Court must grant a new trial. We disagree.

In reviewing a challenge to the weight of the evidence, our standard of review is as follows:

> The weight of the evidence is exclusively for the finder of the fact who is free to believe all, part or none of

> the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the… verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> ***Commonwealth v. Small***, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellant court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Champney***, 574 Pa. 435, 444, 832 A.2d 403, 408

(2003), *cert denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004)

(most internal citations omitted).

Instantly, the trial court analyzed Appellant's issue as follows:

> [D.G.] testified credibly that she was riding her bike when Appellant initiated conversation with her several times. [D.G.] then goes to ride her bike in the park and Appellant accosts her by knocking over her bike and pushing her against a wall. Appellant then succeeded in engaging in unlawful contact and indecently assaulting [D.G.] [D.G.] was questioned and interviewed multiple times on July 2, 2019. Each time [D.G.] was interviewed she remained consistent with detailing the most important facts of the event. [D.G.'s] interviews were taken contemporaneously to the crime while the information was very fresh in her memory.
>
> Additionally, [D.G.'s] testimony was corroborated by Adams. Adams entered the park and observed Appellant with his pants down and his buttocks exposed. Adams acted as a good Samaritan and quickly intervened. It is by happenstance that Adams was not injured as Appellant repeatedly lunged at him with a box cutter. The accounts of events from [D.G.] and Adams are factually similar except for the order in which some of the events occurred. These slight differences in no way diminish the insurmountable

detailed factual evidence presented at trial.

Appellant hinges his argument [on] the jury ascribing greater weight to some evidence by pointing out the inconsistencies of [D.G.] and Adams' testimony. Said plainly, [D.G.] and Adams' testimony was credible. The credibility of the witnesses was resolved by the jury.

\* \* \*

While there were some minor discrepancies, this [c]ourt does not find that the evidence was so tenuous, vague and uncertain that the verdict shocks the conscience of the court. [D.G.] was an 11-year-old girl at the time of the crime. On that date she provided [an] interview describing with detail exactly how Appellant attempted to rape her. At trial, almost three years later [D.G.] testifies reliably, and the most important details of Jul[y] 2, 2019 are unchanged. Furthermore, discrepancies in testimony are credibility determination[s], exclusively within the purview of the jury.

(Trial Court Opinion at 11-12). We agree with the court's analysis.

Here, it was within the jury's purview to determine the credibility of D.G.'s and Adams' testimony. *See Champney, supra*. The court expressly noted that any inconsistencies in D.G.'s testimony were not critical to her description of the assault that occurred. *See Commonwealth v. Fuentes*, 272 A.3d 511, 519 (Pa.Super. 2022) (holding victim's conflicting testimony regarding assault does not rise to level of "shocking the conscience of the court" given victim's overarching ability to provide salient facts relevant to sexual assault she had experienced). Additionally, the jury heard that some of D.G.'s and Adams' testimony was inconsistent, and still deemed their testimony credible. We will not substitute our judgment for the jury as fact finder. *See Champney, supra*. On this record, we cannot say that the trial

court abused its discretion in denying Appellant's challenge to the weight of the evidence. *See id.* Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>October 27, 2023</u>