J-S09031-22

2022 PA Super 60

| IN THE INTEREST OF: K.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| APPEAL OF: R.H., MOTHER | : : : : : : : : : : | No. 2507 EDA 2021 |

Appeal from the Order Entered November 15, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000999-2021

BEFORE: LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED APRIL 8, 2022**

Appellant, R.H. ("Mother"), appeals from the Order entered in the Court of Common Pleas of Philadelphia County, Juvenile Division, adjudicating her child, K.B. (D.O.B. 07/03/2021) ("Child"), dependent. After careful review, we affirm.

The trial court sets forth the relevant facts and procedural history, as follows:

> The Philadelphia Department of Human Services ("DHS") first became aware of this family on September 18, 2021, when it received a Child Protective Services ("CPS") report alleging that the Child suffered unexplained injuries that were consistent with non-accidental or inflicted trauma. N.T., 11/15/21, at 5-6. At this time, Child was two months old and primarily resided in Clearwater, Florida with Mother but was currently and temporarily residing with his Father, L.B. ("Father") in Philadelphia, Pennsylvania.[fn 1] The report alleged that Father brought Child to

---

[*] Former Justice specially assigned to the Superior Court.

the Children's Hospital of Philadelphia ("CHOP") due to bruising around his groin. *Id.* at 5-6.

Because of the Child's age and unknown mechanism for the injury, a skeletal survey was completed which indicated multiple skull fractures. *Id*. The CHOP doctor stated that he was unable to determine when the skull fractures had occurred, that they were in various stages of healing, and were caused by blunt force trauma. *Id.* at 6-7. He stated that the bruises around the Child's groin were in various stages of healing as well and likely occurred a few days prior to when the Child was taken to CHOP on September 18, 2021. *Id.* at 7-8. Neither Mother nor Father provided an explanation that could account for the Child's injuries. *Id.* at 6-7. The CHOP doctor stated that the Child's skull injuries were consistent with multiple incidents of non-accidental or inflicted trauma and could have occurred during either the Child's time in Florida or Philadelphia.[fn 2] *Id.* at 7. All Counsel stipulated to these facts at the Adjudicatory Hearing on November 15, 2021. *Id.* at 8.

---

Fn 1  Father has not joined the appeal.

Fn 2  Mother and Father reported that Child had been residing in Florida with Mother until Mother brought the Child to temporarily reside with Father in Philadelphia in late August 2021 and again in early September 2021. N.T. 11/15/2021 at 7.

---

DHS obtained an Order of Protective Custody ("OPC") on September 30, 2021, for the Child based on his unexplained skull fractures and bruising. OPC, 9/30/21, at 2. A Shelter Care Hearing was held on October 1, 2021, at which time the court ordered that the Child remain in the temporary legal custody of DHS and in the home of his Maternal Aunt. Trial Court Order, 10/01/21, at 2. The Adjudicatory Hearing was originally scheduled for October 7, 2021, but had to be continued due to outstanding medical records for the Child. Trial Court Order at 2. The Adjudicatory Hearing was then scheduled for November 15, 2021.

On October 8, 2021, Mother, without authorization from [the trial court] or from DHS, took the Child from a scheduled medical

appointment and absconded with him to Florida. N.T, 11/15/21, at 30-31.[1] The Florida Department of Children and Families "DCF" subsequently obtained an OPC and again removed the Child from Mother's care.[fn 3] (DHS Motion to Transfer Venue, 10/14/21, at ¶ 8).[2]

---

> Fn 3  On October 14, 2021, the Deputy City Solicitor for Philadelphia DHS filed a motion with this Court to transfer jurisdiction to Florida.  (See DHS Motion 10/14/21).  [The Trial Court] arranged  a phone call with Judge James Pierce of Pinellas County Florida to discuss the jurisdictional issues.  The Judges determined that the Adjudicatory Hearing should take place in Philadelphia where all the relevant witnesses and evidence were located and the case should be transferred to Florida for services if and when the child was adjudicated.

---

The relevant Adjudicatory Hearing was held before [the trial court] on November 15, 2021.  At the beginning of the hearing, all Counsel stipulated to the facts alleged in the CPS report.  (*Id.* at 5-8; DHS Exhibit 1; *See infra* p. 1-2).  Dr. Anish Raj of CHOP [fn 4] testified that he examined the Child at CHOP and discovered bruising on the inner thighs on September 18, 2021.  *Id.* at 10, 12.  He also stated that he examined the Childs' skeletal survey which demonstrated multiple parietal and occipital skull fractures.  *Id.*  He testified that three weeks later a follow-up skeletal survey was completed which demonstrated multiple rib fractures.  *Id.* at 11.

---

[1] DHS investigative worker Naomi Rivera explained that a pre-approved babysitter, the mother-in-law of Child's maternal aunt, accompanied Mother and Child to the October 8, 2021, medical appointment.  At some point during the appointment, however, the babysitter left to obtain medication for her husband, and when she returned she learned that Mother had left the appointment with Child.  N.T. at 30-31.

[2] At the subsequent Adjudicatory Hearing, DHS noted that Child was in the physical custody of Pinellas County, Florida Children and Youth Services, in a foster home in Florida.  N.T., 11/15/21, at 5.

He further testified that he met with Mother and Father on September 19, 2021, and that neither parent was able to offer a plausible explanation for the injuries. *Id.* at 12. He testified that Mother stated that the Child had fallen out of bed on his second day of life and had landed in the prone position but that this would not have explained his current injuries. *Id.* at 12-13, 20. Dr. Raj testified that although he is unable to date the Child's multiple fractures with certainty, that the injuries were not consistent with having occurred in July of 2021, but could possibly have occurred in August 2021. *Id.* at 14. He also testified that the Child's bruising likely occurred within a week of him presenting to the hospital. *Id.* at 21-22. Dr. Raj also testified that he prepared a Child Protection Team consultation report and that all of his opinions in the report were to a reasonable degree of medical certainty. *Id.* at 17.[fn 5] He stated that he diagnosed the Child with nonaccidental or inflicted trauma due to the multiple injuries at different stages of healing with no plausible accidental mechanism or underlying medical predisposition. *Id.* at 16-17.

---

Fn 5 The Child Protection Team Report was entered into evidence as DHS Exhibit 2

---

The DHS investigative worker, Naomi Rivera, also testified at the November 15, 2021, hearing. She testified that she spoke to Mother and Father about the September 2021 CPS report and that they indicated that the Child went back and forth between Mother's and Father's care between the first week of September and September 18, 2021. *Id.* at 28-29. She stated that the Child was in the primary care of Father when Mother left Philadelphia, but that Mother picked Child up on September 17, 2021, and was in her care the day before Father took Child to the hospital on September 18, 2021. *Id.* at 29, 33. Ms. Rivera testified that she does not believe the Child would be safe with either parent. *Id.* at 30.

At the conclusion of the Adjudicatory Hearing, [the trial court] adjudicated the Child dependent based on present inability. *Id.* at 38. [The trial court] ordered the Child to be placed in Foster Care in Pinellas County, Florida and ordered the case to be transferred to the Florida DCF. *Id.*; Trial Ct. Order, 11/15/21, at 1-2). After Pinellas County assumed legal custody of the Child,

- 4 -

[the trial court] discharged the temporary commitment of the Child to Philadelphia DHS and discharged the dependency petition. Administrative Order, 11/23/21. On December 7, 2021, Mother, along with counsel, filed a timely Notice of Appeal along with a Statement of Errors [pursuant to Pa.R.A.P 1925(b) challenging the sufficiency of the evidence offered to prove Child's dependency and charging the trial court with error for precluding Mother from participating by phone in the hearing].

Trial Court Pa.R.A.P. 1925(a) Opinion, 12/22/21, at 1-5.

Mother's counseled "Brief for Appellant" raises the following questions for our consideration (verbatim):

1. Did the Trial Judge rule in error that the Philadelphia City Solicitor's Office meant [sic] its burden of proof that the child should be adjudicated dependent under 42 Pa.C.S. sec. 6302(1)[?]

2. Did the judge rule in error to not allow Mother to participate by phone when she attended prior court hearings, was available to proceed at prior court hearings and had to return to her home state due to economic concerns?

Brief for Appellant, at 4.

Our standard of review in child dependency matters is as follows:

In reviewing an order in a dependency matter, our standard of review requires us to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

***In re Interest of N.B***., 260 A.3d 236, 245 (Pa. Super. 2021) (citation and internal quotation marks omitted).

We are guided by the following principles:

To adjudicate a child dependent, a trial court must determine, by clear and convincing evidence, that the child:

- 5 -

is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.

42 Pa.C.S. § 6302. Clear and convincing evidence has been defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

In accordance with the overarching purpose of the Juvenile Act to preserve the unity of the family whenever possible, a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available. This Court has defined proper parental care as that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child.

*In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013) (citations omitted and formatting altered); *accord* 42 Pa.C.S. § 6351(a).

Instantly, the trial court adjudicated four-month-old Child dependent after determining DHS had demonstrated by clear and convincing evidence a "present inability" in Mother and Father to provide Child with proper parental care. Following a thorough review of the record, we find no abuse of discretion in this regard.

As discussed in detail above, the Adjudicatory Hearing commenced with the parties' stipulation to facts that CHOP physicians diagnosed Child with multiple unexplained, unnatural, non-accidental, abusive trauma consisting of

skull fractures and a subdural hematoma along with pervasive bruising in the groin and peritoneal area, all inflicted during a timeframe in which Mother and Father were exchanging primary physical custody of Child with one another. N.T., 11/15/22, at 5-7. A follow-up skeletal survey of Child in early October revealed rib fractures, with signs of healing, that were not apparent on the first skeletal survey taken three weeks prior.[3] N.T. at 11.

The physicians opined that neither Mother nor Father had offered a plausible innocent explanation for the serious injuries, that Child was physically incapable of any act that could have caused himself such harm, and that no underlying illness or genetic disease was responsible. *Id*. The DHS investigative worker assigned to the case testified it was her belief that Child was unsafe with either parent. N.T. at 29-32. Finally, compounding the trial court's concern over Mother's ability to care properly for Child was her deliberate and unauthorized act of taking Child from a medical appointment one month before the scheduled Adjudicatory Hearing and absconding with him to Florida in violation of a court order.

---

[3] Specifically, doctors determined that the injuries causing Child's bruising probably occurred sometime in the week leading up to his September 18, 2021, presentation at CHOP. N.T. at 10  His skull fractures were in various stages of healing and could have occurred at anytime in August or September of 2021. N.T. at 13. A subdural hemorrhage was estimated to be less than a week old. N.T. at 22. There were no bruises observed on the Child's head. *Id*.

Based on the foregoing, the record supports the trial court's conclusion that Child is presently "without proper parental care or control" pursuant to 42 Pa.C.S.A. § 6302. In reaching this conclusion, the trial court appropriately assessed the evidence, which included the opinions of treating physicians and the social worker assigned to Child's case, an unchallenged medical record documenting Child's injuries, and a relevant timeframe in which both Mother and Father were taking turns as primary caretaker for Child when his injuries occurred, and it determined Child was unsafe in either parent's care.[4]

Mother's argument to the contrary essentially asks this Court to reweigh the evidence in a light more favorable to her, but it is beyond our purview to engage in such review. *See In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted) (recognizing the trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence). In light of the totality of circumstances adduced at Child's Adjudicatory Hearing, we view Mother's first issue as meritless.

Mother's remaining issue challenges the trial court's ruling denying her request to participate telephonically in the Adjudicatory Hearing pursuant to

---

[4] The record confirmed that Mother and Father relied at times on others to monitor Child. As Pennsylvania law requires, parents have a duty not merely to refrain from harming their children, but also a duty to protect the children from others who may inflict harm. *In the Matter of L.Z*, 111 A.3d 1164 (Pa. 2015).

J-S09031-22

Rule 1129 of the Pennsylvania Rules of Juvenile Court Procedure.[5]  In its

Pa.R.A.P. 1925(a) opinion, the trial court deems this issue either waived or,

in the alternative, devoid of merit, under the following facts and rationale:

> "Upon good cause shown, a court *may* utilize advanced communication technology pursuant to Rule 1129."  237 Pa.Code § 1406 (emphasis added).  Rule 1129 permits, but in no way compels, the use of advanced communication technology in dependency proceedings.  237 Pa.Code § 1129(A), Comments.  Further, Philadelphia Family Court has the right to require parties to participate in person at proceedings held in the Philadelphia Family Courthouse.  ***See*** President Judge Administrative Order No 34, ¶ 2 (15 May 2020).
>
> . . .

---

[5] Rule 1129, "Appearance by Advanced Communication Technology, provides, in relevant part:

**A. Generally.**

   (1)   The child, guardian, or a witness may appear at a proceeding by utilizing advanced communication technology pursuant to Rules 1140, 1242, 1406, 1512, and 1608.

   . . .

   *Comment*.
   . . .

   This rule is not intended to compel the use of advanced communication technology but rather permit appearance by telephone or by a system providing two-way simultaneous audio-visual communication.

   . . . .

Pa.R.J.C.P. 1129(A)(1) and Comment.

[S]ignificantly[,] the day after Mother received notice of the court date [for the Adjudicatory Hearing], Mother took Child from a [Philadelphia] medical appointment without permission from this Court or from DHS, and absconded to Florida.[6] N.T. 11/15/21 at 30-31. [The trial court] is under no obligation to allow parents to participate in adjudicatory hearing telephonically. Due to the seriousness of the allegations against Mother and because her absence from Philadelphia was her own choice—a choice that [the trial court] believes put her Child in danger—[the trial court] properly denied her request to participate in the hearing telephonically.

. . .

[In the alternative,] Mother's counsel has effectively waived this issue . . . . Counsel for Mother contacted [the trial court] by email on November 11, 2021, requesting that Mother be able to participate in the November 15, 2021 Adjudicatory Hearing by phone due to the costs of traveling from Florida to Philadelphia. [The trial court] denied this request.

At the November 15, 2021 Adjudicatory Hearing, Counsel for Mother stated that mother was unable to come to Philadelphia for the hearing because she was in Florida and that Mother was under the impression that she could participate by phone. N.T., 11/15/21, at 3. Counsel for Mother did not request a continuance or object to the [trial court's] denial of Mother's request to participate by phone. Moreover, Counsel for Mother indicated that he was ready to proceed despite Mother's absence.

Mother's attorney waited until four days prior to the Adjudicatory Hearing to make this request, off the record, when both he and Mother had notice of the date of the hearing for over a month. N.T., 10/07/21, at 11-12.
. . .

[I]n order to preserve an issue for appeal, a party must make a timely, specific objection at trial. *Reilly by Reilly v. Southeastern Pennsylvania Transp. Auth.*, 489 A.2d 1291,

---

[6] As noted, *supra*, Child was subsequently taken into protective custody by Florida Department of Children and Families pursuant to court order.

- 10 -

1296 (Pa. 1985). Issues not preserved for appellate review cannot be considered by an appellate court. ***Id***.

Mother's attorney did not make his request on the record at the October 7, 2021 hearing, nor did he file any motion to allow for Mother's telephonic appearance or object to [the trial court's] decision at the November 15, 2021, Adjudicatory Hearing. Additionally, when asked if he was able to proceed, Mother's attorney responded in the affirmative, despite Mother's absence. N.T. 11/15/21, at 3.

Trial Court Opinion, at 6-8.

Mother argues it was error for the trial court to deny her request when, she maintains, it was explained at the Adjudicatory Hearing that economic considerations required her to return to her Florida home. ***See*** Brief for Appellant, at 9. She posits that she demonstrated her willingness to attend the Adjudicatory Hearing in person by both appearing in court on October 7, 2021, the first scheduled date of the hearing, and objecting to DHS's motion for a continuance to allow relevant medical providers more time to produce Child's medical records pursuant to the advance request made by DHS. ***See*** N.T., 10/7/21, p. 5.

Initially, we note that our review of the record discloses no instance where Mother alleged economic hardship either as grounds for her objection to the court's October 7, 2021, order granting the DHS advance request for a

- 11 -

continuance or as a reason supporting her wish to participate telephonically at the November 15, 2021, Adjudicatory Hearing. [7]

Moreover, the record supports the court's finding that from when authorities recovered Child from Mother's unauthorized custody in Florida on October 8, 2021, to when the Adjudicatory Hearing commenced on November 15, 2021, Mother had never presented the court with an oral or written motion requesting permission to attend the Adjudicatory Hearing telephonically. Instead, counsel for Mother waited thirty-three days—with just four days remaining before the scheduled Adjudicatory Hearing—to send an email to the trial court's law clerk asking if Mother could participate by telephone. Trial Court Opinion, at 7. The law clerk responded that the court's policy is to limit the telephonic option to incarcerated parents. *Id*.

It was not until the Adjudicatory Hearing that counsel for Mother addressed the court directly as to Mother's participation, and even then, he offered only that Mother "was under the impression" she could participate by

---

[7] The notes of testimony from the October 7, 2021, hearing show that Mother's objection to the continuance stated only that "Mom lives out of state. She wanted this case to be heard as soon as possible[,]" and "Mom would just like a sooner date, since she lives in Florida." N.T., 10/7/21, at 8, 12.

The only other discussion with the court even remotely related to Mother's economic circumstances was one suggesting she possessed some means in that regard. Specifically, Mother argued to the court that a delay to allow DHS time to acquire medical coverage necessary to cover expenses for Child's medical examinations could be averted by using her own medical insurance instead, as her carrier allegedly confirmed it would cover Child's medical appointment at issue. N.T. at 13-14.

phone. He otherwise stopped short of advocating that Mother should be permitted to take part in the hearing by telephone:

> **[COUNSEL]:** Good afternoon, Your Honor. . . . Counsel for Mother. And Mother is in Florida. She's apologizing to the Court that she's in Florida. She was unable to come back to Philadelphia for the hearing.
>
> **THE COURT:** Are you able to proceed?
>
> **[COUNSEL]:** Yes. She was under the impression that, since she was here last time, should [sic] could participate by phone, but I'll leave that up to Your Honor.
>
> **THE COURT:** Why would – did you tell her that?
>
> **[COUNSEL]:** No.
>
> **THE COURT:** Did you tell her what the Court's policy is?
>
> **[COUNSEL]:** Yes.
>
> **THE COURT:** So she shouldn't have been under that impression.
>
> **[COUNSEL]:** Okay.

N.T., 11/15/21, at 3-4.

In light of the authority set forth, *supra*, we discern no grounds for reversal without any indication of record that, at the time of the hearing, Mother either advocated for telephonic participation or raised a timely and specific objection to the court's adverse ruling in order to preserve an issue for appeal. ***See Reilly by Reilly***, ***supra*** (requiring timely and specific objection to preserve issue on appeal).

- 13 -

Even if waiver did not apply, we would find Mother made no case for the optional accommodation available under Rule 1129, such that the trial court committed no error in its application of the rule in light of the "good cause shown" standard under 237 Pa.Code § 1406 and the President Judge Administrative Order No 34, ¶ 2 (15 May 2020) in effect at the time. In this regard, the court was aware that Mother had elected to flee with Child to Florida in contravention of the trial court's order and, thereafter, had offered no indication of record that economic hardship prevented her from attending the hearing in person. In reaching our decision upholding the court's ruling denying her accommodation under Rule 1129, we find persuasive the trial court's Rule 1925(a) opinion excerpted above and adopt it for purposes of disposing Mother's second issue.

For the foregoing reasons, we affirm.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/2022

- 14 -