J-A21013-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHNATHAN BRUNNER | : | |
| | : | |
| Appellant | : | No. 1519 MDA 2024 |

Appeal from the Judgment of Sentence Entered July 16, 2024
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0002999-2023

BEFORE: PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:     **FILED: SEPTEMBER 24, 2025**

Johnathan Brunner appeals from the judgment of sentence, a term of 18 months' probation, entered in the Court of Common Pleas of Berks County after he was convicted of one count of endangering the welfare of children[1] ("EWOC") at a jury trial. On appeal, Brunner challenges the sufficiency and weight of the evidence to sustain his conviction. After careful review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 4304(a)(1).

On October 2, 2023, Appellant was charged with EWOC and intimidation.[2] A jury trial commenced on June 4, 2024. We glean the following facts from the certified record.

On January 31, 2022, while working as an intake caseworker for the Berks County Children & Youth Services ("CYS") Sexual Abuse Unit, Kasi Offerman received a Child Protective Services ("CPS") report relating to the alleged sexual abuse of Appellant's 7-year-old daughter, T.B. **See** N.T. Trial, 6/5/24, at 114-15. The information in the CPS report identified the alleged perpetrator as an uncle named Thomas but did not specify a last name. **See id.** at 116. Offerman and Marie Rossignoli, who was working as an intern with the Sexual Abuse Unit at the time, conducted an unannounced visit to Appellant's home on South 11th Street where Offerman served Appellant with a non-offending parent ("NOP") letter that outlined the CYS investigation process, potential investigation outcomes, and Appellant's right to legal representation. **See id.** at 116-19. The NOP letter, which was presented to the jury, indicated that there was an open, pending investigation concerning an allegation of sexual abuse of T.B. and that Appellant was not the alleged perpetrator. **See** Commonwealth Exhibit 1. However, the NOP letter provided no further information concerning the specific allegation of abuse or the identity of the alleged perpetrator. **See id.**

---

[2] 18 Pa.C.S.A. § 4958(a)(1).

Offerman testified that after serving the letter, she asked Appellant "if anyone in the home's name is Thomas[,]" and he confirmed that his brother, with whom he shared the home, is named Thomas. *See* N.T. Trial, 6/5/24, at 120. Appellant informed Offerman that Thomas was at work at the time but offered to have Thomas call her. *See id.* at 151. Appellant subsequently brought T.B. outside to speak with Offerman while he remained in close proximity and engaged in an argumentative conversation with Rossignoli. *See id.* at 124-25, 183-85. Offerman stated that although T.B. seemed timid, she reported that she felt safe and that nothing inappropriate was happening in the home. *See id.* at 127. Offerman also spoke with T.B.'s sibling, who reported the same. *See id.* at 129. At no point during the visit did Offerman advise Appellant that the children should leave the home or suggest that they were not safe there. *See id.* at 155. Rather, Offerman testified that at the time of the initial visit, there was not enough evidence to remove the children from the home or to ask Thomas to leave the home because CYS "did not have a disclosure of abuse." *Id.* at 172-73.

On February 1, 2022, Offerman spoke with Thomas, and at the conclusion of the call, Offerman neither informed Thomas that he should leave the home, nor did she advise Appellant to remove the children from the home. *See id.* at 157-58, 166-67.

On February 2, 2022, Offerman followed up on the investigation by speaking with T.B. in private at school. During that conversation, T.B. revealed

she was being sexually abused by her uncle, Thomas Brunner. **See id.** at 142. Notably, T.B. reported that her uncle sexually abused her most recently on the evening of January 31st and into the early morning of February 1st, after Offerman's initial visit to the home. **See id.** at 143. Offerman testified that T.B. did not want Offerman to inform Appellant about anything she had disclosed out of fear that "she would get spanked or grounded because [Appellant] did not want her in her uncle's room." **Id.** at 143-44. Offerman met with Appellant at T.B.'s school that same day and disclosed what T.B. had revealed to her, and she subsequently obtained a verbal court order to take custody of Appellant's children. **See id.** at 161.

Detective Joseph Brown of the Berks County District Attorney's Office testified that he conducted a voluntary, recorded interview of Appellant on February 16, 2022 and that he subsequently filed charges against him. **See** N.T. Trial, 6/5/24, at 201, 205. Specifically, when the Commonwealth asked Detective Brown what led him to file charges against Appellant, the following exchange ensued:

> [Detective Brown:]     The charges were based on the ChildLine being reported on January 31, 2022, where CYS went out, spoke with [Appellant], notified him of the allegation, notified him of who the victim is, and who the allegation[] was made against. And subsequently, T.B. reporting, when interviewed at the school and reporting to a counselor, that she had been abused since that date.
>
> So after [Appellant] was originally notified of the allegation, [T.B.] was then subsequently abused another time by Thomas Brunner.

> [Prosecution:] And did you confirm in your interview with [Appellant] that Thomas Brunner, who is not the subject of this case—that Thomas Brunner remained in the home after the CYS visit?
>
> [Detective Brown:] He did.
>
> [Prosecution:] And then did he also confirm with you that [T.B.], the victim, also remained in that home after the CYS visit?
>
> [Detective Brown:] Yes.

*Id.* at 202. Defense counsel presented the recorded interview to the jury, and on cross-examination, Detective Brown acknowledged that in the interview, Appellant indicated he did not receive any specifics regarding the allegation when CYS visited his home on January 31. *See id.* at 209. On redirect examination, the following exchange ensued:

> [Prosecution:] Detective, you heard in the interview [Appellant] said that on the 31st, the night that—the day that CYS arrived, he said in the interview that he waited up for his brother to come home to tell him what happened; do you recall that?
>
> [Detective Brown:] Correct.
>
> [Prosecution:] And he said that his brother came home sometime between 10 and midnight, and his brother said he was going to leave until this was cleared up; is that correct?
>
> [Detective Brown:] Yes. Or would leave.

*Id.* at 214-15. Detective Brown also indicated it was his understanding that Appellant slept on the first floor of the row home and that the children slept in a bedroom on the second floor within 15 feet of Thomas's room. *See id.* at 215-16. The parties stipulated that on November 21, 2023, Thomas Brunner pled guilty to aggravated assault and specifically admitted to sexually

assaulting T.B. between July 2021 and February 2022 at 317 South 11th Street. *See* Commonwealth Exhibit 2.

On June 6, 2024, after hearing all evidence and closing arguments, the jury convicted Appellant of EWOC.[3] On July 16, 2024, the court sentenced Appellant to 18 months' probation with a condition that prohibited Appellant from contacting his 3 children. Appellant timely filed a post-sentence motion challenging the weight of the evidence, which the court denied on September 20, 2024. Appellant timely filed a notice of appeal and a court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court filed its opinion, pursuant to Pa.R.A.P. 1925(a), on December 13, 2024.

Appellant raises the following questions for our review:

A. Whether there was insufficient evidence to establish the necessary *mens rea* in that it was not sufficiently established that Appellant was aware that the minor child was in circumstances that could threaten the minor child's welfare and knowingly either failed to act, or took action so lame or meager that such actions could not reasonably have been expected to protect the minor child's welfare?

B. Whether the trial court abused its discretion and erred in denying Appellant's post-sentence motion where it is clear from the record that the verdict issued was rendered unreliable, tainted, questionable, and contrary to the weight of the evidence by the trial testimony of Commonwealth witness, CYS Caseworker Kasi Offerman, as her testimony was replete with inconsistencies, lies, half-truths, and so contrary to her original CYS reports and

---

[3] The court granted Appellant's motion for judgment of acquittal on the intimidation charge at the close of the Commonwealth's case. *See* N.T. Trial, 6/5/24, at 231.

the dependency petition presented at trial as to render the entirety of her testimony incredible, to and including, but not necessarily limited to: the date of the initial home visit, whether or not Appellant refused to allow CYS to speak with the minor child, whether or not Appellant refused to allow CYS to speak with [his] brother, and whether CYS informed Appellant that he was required to make his brother leave their shared residence?

Appellant's Brief, at 5 (issues reordered for ease of disposition; formatting altered; lower court and suggested answers omitted).

In his first issue, Appellant challenges the sufficiency of the evidence to support his EWOC conviction.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Kennedy**, 332 A.3d 133, 140 (Pa. Super. 2025) (citation omitted).

Pursuant to Section 4304 of our Criminal Code, "[a] parent, guardian or other person supervising the welfare of a child under 18 years of age[] …

- 7 -

commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a)(1). "[I]n determining whether a parent or guardian's conduct is sufficient to support a conviction under Section 4304(a)(1), courts must consider whether the conduct at issue offends the common sense of the community and the sense of decency, propriety and the morality which most people entertain." ***Commonwealth v. Howard***, 257 A.3d 1217, 1228 (Pa. 2021) (internal quotation marks and citation omitted).

Because EWOC "is a specific intent offense enacted in broad terms so as to safeguard the welfare and security of children[,] … the Commonwealth must prove a knowing violation of a duty of care." ***Commonwealth v. Delamarter***, 302 A.3d 1195, 1201 (Pa. Super. 2023) (emphasis and citation omitted). Our Criminal Code further defines the *mens rea* of knowingly as follows:

**(b) Kinds of culpability defined.—**

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S.A. § 302(b)(2). Accordingly, to establish that a defendant acted knowingly for purposes of sustaining a conviction for EWOC, the

Commonwealth must establish the following elements beyond a reasonable doubt:

> (1) The accused was aware of [his] duty to protect the child;
>
> (2) The accused was aware that the child was in circumstances that could threaten the child's physical or psychological welfare; and
>
> (3) The accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

*Delamarter*, 302 A.3d at 1201 (brackets and citation omitted). Although "the defendant must be aware that they have placed the child in a perilous or dangerous situation, [] they do not have to be aware of the certainty of a particular result[.]" *Id.* at 1205; *see Howard*, 257 A.3d at 1227 ("[A]s it pertains to Section 4304, the *result* of the actor's conduct is the creation of a dangerous *situation*, which is what Section 4304(a)(1) seeks to prevent.") (emphasis in original). Moreover, this Court has stated that in using

> a common sense of the community approach to interpret the specific intent element of the statute, we find an implicit recognition that parents at times can make mistakes in judgment and that their children may be harmed as a result. However, for such mistakes to rise to the level of criminal culpability, parents must knowingly allow their children to be at risk with awareness of the potential consequences of their actions or of their failure to act.

*Commonwealth v. Pahel*, 689 A.2d 963, 965 (Pa. Super. 1997) (citation omitted); *see Delamarter*, 302 A.3d at 1207 (finding sufficient evidence to satisfy EWOC *mens rea* where defendant "commits a DUI with a child passenger and simultaneously engages in multiple forms of unsafe driving by

crossing through an oncoming lane of traffic while speeding and reviewing a text message on a cellular phone").

In the case sub judice, to sustain a conviction for EWOC, the Commonwealth was required to prove, beyond a reasonable doubt, that Appellant knowingly endangered T.B.'s welfare by violating a duty of care, protection, or support following CYS's initial visit on January 31, 2022, where T.B. was sexually abused by Thomas that very evening and into the early morning hours of February 1st.

Appellant does not contest whether the Commonwealth presented sufficient evidence to satisfy the first *mens rea* element and readily admits that he was aware of his duty to protect T.B. as her parent. **See** Appellant's Brief, at 25; **see also Interest of K.B.**, 273 A.3d 1125, 1130 n.4 (Pa. Super. 2022) ("[P]arents have a duty not merely to refrain from harming their children, but also a duty to protect the children from others who may inflict harm.") (citation omitted). Rather, Appellant contests whether the Commonwealth presented sufficient evidence to satisfy the second element to sustain his EWOC conviction where he "was unaware of the nature of the danger posed to his daughter, and, further, was unaware of the source of that danger." **Id.** Accordingly, Appellant contends that because he was unaware that he had placed T.B. in a dangerous situation following CYS's initial visit, he cannot be said to have failed to take action to protect her welfare. **See id.** at 25-26, 28.

The Commonwealth contends Appellant was aware his brother posed a danger to T.B.'s welfare because CYS workers "asked if Thomas lived there during the encounter, which circumstantial[ly] gives rise to the belief that he was the alleged perpetrator." Appellee's Brief, at 11. The Commonwealth further contends Appellant was aware that T.B. was in danger because Appellant spoke with Thomas that very evening about CYS's visit, and Thomas indicated he would leave the shared home "until this was cleared up." *Id.* We agree that the Commonwealth presented sufficient evidence to sustain Appellant's EWOC conviction.

It is undisputed that the NOP letter did not inform Appellant of the substance of the abuse allegations and there was testimony that CYS did not advise Appellant to remove his children or his brother from the home or suggest that T.B. was unsafe in the home. However, Detective Brown testified that CYS informed Appellant of the alleged perpetrator's identity. *See* N.T Trial, 6/5/24, at 202. Although this testimony was contradicted, it is well-established that "a mere conflict in testimony does not render the evidence insufficient." *Commonwealth v. Castelhun*, 889 A.2d 1228, 1232 (Pa. Super. 2005); *see also Kennedy*, 332 A.3d at 140 (factfinder determines witness credibility and "is free to believe all, part or none of the evidence"). Furthermore, Appellant's awareness of the danger Thomas posed to T.B. could reasonably be inferred from caseworker Offerman's testimony that T.B. asked Offerman not to inform Appellant of the abuse because Appellant "did not want

her in her uncle's room." N.T. Trial, 6/5/24, at 143-44. Therefore, upon reviewing the evidence presented by the Commonwealth and drawing all reasonable inferences in its favor as verdict winner, we find that the Commonwealth presented sufficient evidence to sustain Appellant's EWOC conviction.

In his second issue, Appellant challenges the weight of the evidence. "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Spence*, 290 A.3d 301, 310 (Pa. Super. 2023) (citation omitted).

> Our standard of review in addressing weight of the evidence claims is whether the trial court has exercised an abuse of discretion by overriding or misapplying the law or rendering a judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is or is not against the weight of the evidence. Accordingly, for an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague, and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Williamson*, 330 A.3d 407, 419 (Pa. Super. 2025) (quotation marks and citations omitted).

Appellant contends that because "the majority of the Commonwealth's case revolved around the credibility" of caseworker Offerman's trial testimony, the inconsistencies in her testimony rendered the jury's verdict "unreliable, tainted, questionable, and contrary to the weight of the evidence." Appellant's Brief, at 13, 16.

The trial court addressed Appellant's weight challenge as follows:

> Instantly, the jury heard the testimony and evidence presented during trial and, as the finder of fact, was able to resolve any conflicts and make determinations of credibility as to the weight it afforded such testimony. CYS Caseworker Kasi Offerman was extensively questioned on cross examination of all inconsistencies in her reports and the dependency petition versus her testimony at trial. The jury could have credited the Commonwealth's version of the events[] and could have believed so much of the defense testimony as indicated that Appellant knew that the conduct in question posed a threat to a child's welfare. Thus, the elements of the crime of endangering the welfare of children were established. This court, who likewise viewed the testimony and evidence presented during trial, did not find that the verdict of the jury shocked our sense of justice.

Trial Court Opinion, 12/13/24, at 5.

To successfully challenge the trial court's determination that the jury's guilty verdict was not so contrary to the weight of the evidence as to shock the court's sense of justice, Appellant "needed to demonstrate how the trial court's ruling overrode the law, was manifestly unreasonable, or the product of bias, prejudice, ill-will or partiality." **Commonwealth v. Rogers**, 259 A.3d 539, 541 (Pa. Super. 2021). Appellant has failed to allege or show that the trial court abused its discretion but rather asks us to reassess the credibility of caseworker Offerman's testimony and reweigh the evidence presented by

the Commonwealth, which is beyond our purview. The jury, as factfinder, was "charged with the responsibility to resolve contradictory testimony and questions of credibility, and we may not substitute our judgment in place of the [factfinder]." **Commonwealth v. Fuentes**, 272 A.3d 511, 516 (Pa. Super. 2022) (citation omitted). Therefore, because Appellant has failed to demonstrate an abuse of discretion by the trial court in denying his challenge to the weight of the evidence, he is not entitled to his requested relief.

For the foregoing reasons, Appellant's challenges to the sufficiency and the weight of the evidence fail. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 9/24/2025