J-S23045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDDIE RIVERS | : | |
| | : | |
| Appellant | : | No. 1099 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 6, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001038-2020

BEFORE: STABILE, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:       **FILED OCTOBER 31, 2025**

Eddie Rivers ("Rivers") appeals from the judgment of sentence[1] following his bench trial conviction of rape of a child, unlawful contact with minors, and corruption of minors.[2] Because Rivers's claims are waived and/or meritless, we affirm.

---

[1] Rivers erroneously states this appeal is from his guilty verdict, judgment of sentence, and the denial of his post-sentence motion. *See* Rive's Notice of Appeal, 4/9/24; Rivers's Brief at 1. Because appeals in criminal cases lie from judgment of sentence, we proceed only on that basis. *See Commonwealth v. Shamberger*, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (internal citation omitted) ("[i]n a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions"); *Commonwealth v. O'Neill*, 578 A.2d 1334, 1335 (Pa. Super. 1990) ("in criminal cases appeals lie from judgment of sentence rather than from the verdict of guilt").

[2] *See* 18 Pa.C.S.A. §§ 3121(c); 6318(a)(1); 6301(a)(1)(i).

We take the underlying facts from the trial court's opinion summarizing

the testimony at Rivers's August 2023 trial:

> J.H. [("the victim")] testified that, at the end of May 2018, when she was 11 years old, she ran away from home. While on the streets without a place to live[, the victim] met a man named "Mir" who arranged for her to stay at the home of his relative, Ramir Gaskins ("Ramir"). [The victim] recalled Mir taking her to Ramir's apartment in the housing projects located at 46th and Market Streets in Philadelphia. There[,] she met both Ramir, who identified himself as "Rocky," and [Rivers], . . . who identified himself as "Rock," for the first time.

> [The victim] could not recall the exact date[] that she arrived at Ramir's apartment, but said she stayed for a few days. During that time, [Rivers] offered to . . . draw a large tattoo across [the victim]'s chest. [The victim] stated that she sat on the bed in Ramir's room, while [Rivers] stood in front of her and used a large tattoo gun to draw the tattoo. After getting the tattoo, [the victim] la[y] down on the bed. According to [the victim], [Rivers] then asked her if she wanted a massage. [The victim] initially declined[,] but eventually let [Rivers] massage her back. At this point, [the victim] was lying face down on the bed.

> [Rivers] then pulled [the victim]'s pants down and inserted his penis into her vagina. [The victim] further testified that, in the midst of [Rivers] having sex with her, Ramir walked into the room. [The victim] stated that, when [Rivers] had finished, Ramir forced her to give him oral sex. When [the victim] later went to the bathroom to clean herself, she noticed vaginal bleeding.

> [Rivers] left Ramir's apartment approximately 2-3 hours after the incident. [The victim] remained at the apartment for a few days — until Ramir's grandmother told her to leave. Ramir then took [the victim] to his godparent's home, where they stayed overnight. [The victim] stated that she saw [Rivers] again while she was there. Coincidentally, one of Ramir's godparents, whom [the victim] identified as "KO," knew [the victim]'s mother. [The victim] eventually told KO and his wife that she was sexually assaulted and rap[]ed by [Rivers] and Ramir. As a result, KO and his wife took [the victim] home to her mother.

[The victim] told her mother she had been sexually assaulted and raped. [The victim]'s mother called the police. [The victim] met with police detectives at the Special Victims Unit (SVU), where she made a formal statement and positively identified [Rivers] from a photo array. [The victim] also went to [the] hospital for an examination.

During cross-examination, defense counsel questioned [the victim] extensively about inconsistencies between her initial statement to police, preliminary hearing testimony[,] and trial testimony. One of the main points defense counsel raised in an attempt to discredit [the victim]'s version of events and to contest whether [Rivers] was, in fact, the person who raped her, involved [the victim]'s interchangeable use of the nicknames "Rocky" and "Rock" to identify Ramir and [Rivers].

Ultimately, [the victim] made it clear that [Rivers] was the individual who gave her the tattoo, massaged her back, pulled down her pants[,] and forced his penis into her vagina.

Trial Court 1925(a) Opinion, 11/7/24, at 2-3 (footnotes and record citations omitted).

Following the August 2023 trial and Rivers's conviction, the court ordered a pre-sentence investigation and sexual offender assessment. Rivers filed a motion for extraordinary relief. The court denied the motion in December 2023 and imposed an aggregate prison term of eight to sixteen years followed by five years of reporting probation. Rivers then filed additional post-sentence motions, which were denied by operation of law. This timely appeal followed. *See id*. at 1.

Rivers raises five issues for our review:

1. Did the trial court abuse its discretion and misapply the law by denying [Rivers's] post sentence motion challenging the weight of the evidence?

- 3 -

2. Did the trial court abuse its discretion and misapply the law because there was insufficient evidence to support [Rivers's] convictions?

3. Did the trial court err when it barred the defense from inquiring about [the victim]'s potential sexual contact with KO and Mir, as it was relevant to give motive, bias, and an alternative suspect(s)?

4. Did the trial court err in denying [Rivers's] pretrial motion to quash?

5. Did the trial court show improper bias for [the victim] and against [Rivers] when it admonished trial counsel at one point in the proceedings and allegedly comforted the complainant after cross-examination questioning?[3]

Rivers's Brief at 3 (verb tense and capitalization regularized).

In his first issue, Rivers challenges the weight of the evidence underlying his convictions for rape of a child, unlawful contact with a minor, and corruption of a minor. *See* Rivers's Brief at 10-13.

Our standard of review for a weight claim is well settled:

The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.

\* \* \* \* \*

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts,

_____

[3] We note the issues raised in the 1925(b) statement differ from those raised in the brief. The discrepancies, when relevant to the determination of the issue, are more thoroughly described below.

certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

\* \* \* \* \*

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Mucci*, 143 A.3d 399, 410-11 (Pa. Super. 2016) (quoting *Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013)). A weight claim lacks merit unless the evidence is so tenuous, vague, and uncertain the verdict shocks the conscience of the trial court. *See Commonwealth v. Akhmedov*, 216 A.3d 307, 326 (Pa. Super. 2019).

When a weight challenge is predicated on the credibility of trial testimony, appellate review of the trial court's decision is "extremely limited." *Commonwealth v. Bowen*, 55 A.3d 1254, 1262 (Pa. Super. 2012). "Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." *Id*. Conflicts in the evidence or contradictions in testimony of witnesses are exclusively for the fact finder to resolve. *See Commonwealth v. Sanders*, 42 A.3d 325, 331 (Pa. Super. 2012) (citation omitted). Moreover, "[b]ecause the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination [whether] the verdict

- 5 -

is against the weight of the evidence." ***Commonwealth v. Delmonico***, 251 A.3d 829, 837 (Pa. Super. 2021) (citation omitted).

Following a non-jury trial, the court is restricted in its ability to grant a post-sentence motion: it has no greater authority over its own verdict than it would over a jury verdict. ***See Commonwealth v. Banniger***, 303 A.3d 1085, 1095 (Pa. Super. 2023). ***Accord Commonwealth v. Wilson***, 227 A.3d 928, 938 (Pa. Super. 2020) (citation omitted) (stating that "[p]ost-trial, the court cannot re-deliberate[,] as it is no longer the fact finder").

Rivers contends the victim's testimony contained inconsistent statements but identifies only one relating to the victim's confusion of "Rock" and "Rocky." ***See*** Rivers's Brief at 11. Rivers asserts the victim's failure to clearly explain this inconsistency "significantly impacted the truth and veracity of her testimony." ***Id***. at 13.

The trial court did not find merit in Rivers's claim. It explained:

> The court found that most . . . inconsistencies were of no consequence and were the result of [the victim]'s tender age at the time of the offense or the passage of time. The court found the [victim] credible, particularly when she testified about the crime itself. [The victim] observed [Rivers] for an extended period of time. [The victim] was in close proximity to [Rivers] when he gave her a tattoo, asked to give her a massage, and pulled down her pants.

Trial Court Opinion, 11/7/24, at 5.

The trial court did not abuse its discretion by denying Rivers's weight claim. As a preliminary matter, Rivers fails to provide any authority other than this Court's standard of review when addressing a weight of the evidence

claim. Also, he advances this argument without citing supporting or even relevant caselaw. *See* Pa.R.A.P. 2119(a). That the court, sitting as finder of fact, credited the victim's testimony and rejected Rivers's theory of the case was entirely within its province. *See Commonwealth v. Fuentes*, 272 A.3d 511, 519 (Pa. Super. 2022) (finding trial court did not abuse its discretion by denying weight claim given "the steadfast nucleus of acts underpinning the assaults as described by the victim" despite the victim's youth at the time of the assaults and the passage of time); *Banniger*, 303 A.3d at 1096 (affirming the denial of a weight claim despite "the minor inconsistencies in [the victim's] recollection").

Rivers essentially requests this Court re-weigh the evidence and assess the credibility of the victim. This we cannot do, as it is a task beyond our scope of review. The trial court, as finder of fact, had the duty to determine the credibility of the witnesses and evidence presented at trial. *See Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013) (citation omitted) (stating "[a]n appellate court cannot substitute its judgment for that of the finder of fact"). Rivers has failed to demonstrate the trial court abused its discretion when it determined any inconsistencies did not so undermine the Commonwealth's evidence as to render it so tenuous, vague, and uncertain

as to shock the trial court's conscience.[4]  Accordingly, we decline to disturb the trial court's rejection of Rivers's weight claim.

In his second issue, Rivers challenges the sufficiency of the evidence underlying his convictions for rape of a child, unlawful contact with a minor, and corruption of a minor.  **See** Rivers's Brief at 13-19.

Our standard of review for sufficiency claims is well settled:

> [w]e review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[]finder to find every element of the crime beyond a reasonable doubt.  Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact— while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact[]finder.

**Commonwealth v. Miller**, 172 A.3d 632, 640 (Pa. Super. 2017) (internal citations and quotation marks omitted).

A person commits rape of a child "when the person engages in sexual intercourse with a complainant who is less than 13 years of age."  18 Pa.C.S.A. § 3121(c).  The crime has two elements: (1) engaging in sexual intercourse

_____

[4] Rivers also asserts the trial court abused its discretion by finding the victim's testimony credible because the victim had never previously met him.  **See** Rivers's Brief at 13.  He cites no precedent to support the proposition that a witness cannot credibly identify her abuser simply because he was previously unknown to her, particularly where she had a prolonged opportunity to observe him.

(2) with a person under the age of 13. **See Commonwealth v. Hacker**, 15 A.3d 333, 335-36 (Pa. 2011).

A person may be found guilty of unlawful contact with a minor if he is "intentionally in contact with a minor . . . for the purpose of engaging in an activity prohibited under . . . [a]ny of the offenses enumerated in Chapter 31 (relating to sexual offenses)." 18 Pa.C.S.A. § 6318(a)(1).[5]

Lastly, a person commits the crime of corruption of minors when, "being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age . . . ."[6] 18 Pa.C.S.A. § 6301(a)(1)(i).

Concerning all three convictions, Rivers argues "[w]hile th[e] testimony[] establishes on its face[] the aforementioned elements [of the crimes], the trial court should not have accepted this testimony as trustworthy and/or credible." **See** Rivers's Brief at 15-16. Rivers states the victim's past conviction of shoplifting (a *crimen falsi* crime), inconsistent identification of

---

[5] The statute has been subsequently revised and the relevant provision is now found at 18 Pa.C.S.A. § 6318(a)(1.2).

[6] We note that prior to trial, the Commonwealth changed the grading of this charge from a felony to a misdemeanor. The revised misdemeanor grading does not require a course of conduct. **See** N.T., 12/6/2023, at 2-3. Although both Rivers and the trial court mistakenly assert the court convicted Rivers of the felony, **see** Rivers's Brief at 15; Trial Court Opinion, 11/7/24, at 7, the record demonstrates otherwise. **See** N.T., 12/6/2023, at 2-3.

"Rock" and "Rocky," and differing testimony as to how she got to Ramir's house rendered her testimony unworthy of belief. **See id**. at 13-19.[7]

The trial court, however, found sufficient evidence of guilt. It stated:

[the victim] who was 11 years old when these offenses occurred, testified that [Rivers] pulled her pants down and then forced his penis into her vagina. This testimony, which the court found credible, established the . . . elements of [r]ape of a [c]hild . . . with a person under [13] years of age.

\* \* \* \* \*

[Rivers] had direct physical contact with the [victim] when he raped her.

\* \* \* \* \*

[Rivers] was 26 years of age when he raped the 11-year-old [victim].

Trial Court 1925(a) Opinion, 11/7/24, at 6-7.

Preliminarily, we note Rivers's sufficiency claim is based on a credibility challenge and asserts what is legally regarded as a weight challenge. **See Commonwealth v. Palo**, 24 A.3d 1050, 1055 (Pa. Super. 2011) (internal citation omitted) (noting claims about credibility of victim's testimony challenge the weight of the evidence, not its sufficiency). **See also Commonwealth v. Charlton**, 902 A.2d 554, 561 (Pa. Super. 2006) (stating

_____

[7] Again, we note Rivers fails to provide any authority other than this Court's standard of review when addressing a sufficiency of the evidence claim. Rivers relies solely on a fact- or record-based approach and cites to no applicable precedent.

a weight challenge **_concedes sufficient evidence exists_** to sustain the verdict but questions the credibility of that evidence).

The record supports the trial court's denial of Rivers's sufficiency claims. First, Rivers improperly presents the evidence in the light most favorable to himself, not the Commonwealth. **_See Commonwealth v. Risoldi_**, 238 A.3d 434, 454 (Pa. Super. 2020) (refusing to conduct sufficiency review in the light most favorable to the appellant). Next, this Court has previously stated, "[a] rape victim's uncorroborated testimony to [penile] penetration is sufficient to establish sexual intercourse and thus support a rape conviction." **_Commonwealth v. Wall_**, 953 A.2d 581, 584 (Pa. Super. 2008) (internal citation omitted). The victim's testimony established Rivers raped her. Though Rivers argues elsewhere that there was no corroborating physical evidence, that assertion does not support a sufficiency claim. **_See id_**. (citing **_Commonwealth v. Price_**, 616 A.2d 681, 685 (Pa. Super. 1992)) (stating that "[w]here an appellant argues that physical evidence is 'inconsistent' with a victim's testimony . . . the fact[]finder may . . . reasonably reject [the defense theory])." The trial court found the victim's testimony was sufficient to prove rape. We may not substitute the fact finder's judgment with our own.

Unlawful contact with a minor is best understood as unlawful communication with a minor. **_See Commonwealth v. Strunk_**, 325 A.3d 530, 543 (Pa. 2024) (stating the statute "is intended to criminalize and punish communication designed to induce or otherwise further the sexual exploitation

of children"). The trial court found Rivers's rape of the victim proved "contact" for statutory purposes. **See** Trial Court Opinion, 11/7/24, at 7. The Pennsylvania Supreme Court has recently clarified that "contact" requires the Commonwealth "prove some form of communication between the adult and the minor and that the adult's communication was made for the purpose of facilitating a sexual encounter." **Strunk**, 325 A.3d at 549. We find sufficient evidence of "contact" for reasons other than those cited by the trial court.[8] The record shows Rivers offered to draw a tattoo across the victim's chest. **See** N.T., 8/29/23, at 40. After the tattoo, the victim lay on the bed, and Rivers offered to give her a massage. **See id**. at 43. Although the victim declined the invitation, Rivers pulled down her pants and raped her. **See id**. at 43-44. This evidence demonstrates Rivers communicated with the victim for purposes of facilitating a sexual encounter, establishing unlawful contact with a minor. **See Commonwealth v. Velez**, 51 A.3d 260, 267 (Pa. Super. 2012) (finding sufficient evidence to uphold an unlawful contact conviction when it could be inferred the defendant directed the victim, verbally or nonverbally, to disrobe below the waist and assume a pose of lying on her back with her legs in the air). Therefore, the record showed sufficient evidence to convict Rivers of unlawful contact with a minor.

---

[8] Where the result is correct, we may affirm a trial court's decision on any proper ground even if not cited by that court. **See Commonwealth v. Lehman**, 275 A.3d 513, 520 n.5 (Pa. Super. 2022).

A person commits the crime of corrupting the morals of a minor if by any act, he or she corrupts or tends to corrupt a minor. *See Commonwealth v. Slocum*, 86 A.3d 272, 280 (Pa. Super. 2014). When the actions of the defendant are not in dispute, "the question of sufficiency for the corruption of minors conviction ultimately rests on whether Appellant's actions were of a type that would offend the common sense of the community and the sense of decency, propriety and morality which most people entertain." *Id*. at 281 (citation and quotations omitted). The Commonwealth presented sufficient evidence to convict Rivers of corrupting the morals of a minor. *See Commonwealth v. Kelly*, 102 A.3d 1025, 1033 (Pa. Super. 2014) (finding "Appellant's commission of an indecent assault against the victim was sufficient evidence of . . . misdemeanor grading of corruption of minors"); *Commonwealth v. Decker*, 698 A.2d 99, 101 (Pa. Super. 1997) (finding sufficient evidence for corrupting the morals of a minor when a "37[-]year[-]old man [had] sexual intercourse with a minor some 22 years younger, whom he had just met and who never voiced her consent but remained silent throughout the entire act"). Accordingly, Rivers's second claim merits no relief.

In his third issue, Rivers contends the trial court abused its discretion by preventing the defense from inquiring into the victim's potential sexual contact with KO and Mir, as evidence of motive and bias. *See* Rivers's Brief at 20-24. Preliminarily, we note this claim differs from the 1925(b) statement;

in his 1925(b) statement, Rivers sought the admission of evidence of a prior sexual assault by the victim's stepfather. **See** Rivers's 1925(b) statement, 7/20/24, unnumbered at 3. Both claims are unreviewable and/or meritless.

Pennsylvania's Rape Shield Law, as amended in 2019, provides in pertinent part:

> Evidence of specific instances of the alleged victim's past sexual conduct, **past sexual victimization**, **allegations of past sexual victimization**, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions of any offense listed in subsection (c) except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.C.S.A. § 3104(a) (emphasis added).

This Court will only reverse a trial court's ruling on the admissibility of a victim's prior sexual conduct where that court has clearly abused its discretion. **See Commonwealth v. Thomas**, 336 A.3d 1038, 1043 (Pa. Super. 2025). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." **Id**. (citation and quotation marks omitted).

Pennsylvania courts have recognized limited exceptions to the Rape Shield Law "to reconcile the effect of the statute in excluding evidence with the accused's [S]ixth [A]mendment right to confrontation and cross-

examination." ***Commonwealth v. Guy***, 686 A.2d 397, 400 (Pa. Super. 1996). These exceptions include evidence "that directly negates the act of intercourse with which the defendant is charged . . . . [and] evidence . . . showing that the alleged victim is biased and thus has a motive to lie, fabricate or seek retribution[.]" ***Commonwealth v. Allburn***, 721 A.2d 363, 367 (Pa. Super. 1998) (internal citations and quotations omitted).

Rivers asserts the trial court abused its discretion when it barred inquiry into the victim's potential sexual contact with KO and Mir.[9] Rivers waived this claim by failing to include it in his 1925(b) statement. ***See*** Pa.R.A.P. 1925(b)(4)(vii); ***Commonwealth v. Baker***, 24 A.3d 1006, 1034-35 (Pa. Super. 2011) (holding claim not raised in 1925(b) statement is waived).

Even if Rivers's claim concerning KO and Mir were not waived, it would lack merit. A child under thirteen cannot consent to sex. ***See Velez***, 51 A.3d 265 ("all children under the age of thirteen are legally unable to consent to sexual acts"). Because the victim was eleven at the time of the abuse, she could not legally consent to sex. Thus, whether she had sexual contact with KO and Mir has no legal relevance.

---

[9] In his 1925(b) statement, Rivers asserted a wholly different claim: that the trial court erred in barring the defense from inquiring into the victim's prior sexual assault by her ***stepfather***, not KO and Mir whom he did not mention. Rivers does not pursue on appeal his claim concerning the victim's stepfather's alleged abuse and has therefore abandoned it. ***See Commonwealth v. Rodgers***, 605 A.2d 1228, 1239 (Pa. Super. 1992) (holding an issue abandoned where it has been identified on appeal but not developed in the appellant's brief).

Moreover, were it necessary to further consider Rivers's claim, the Rape Shield Law would plainly bar evidence of the eleven-year-old victim's alleged sexual conduct with KO and Mir because that conduct too would constitute a crime, and whether someone else sexually abused the victim is irrelevant to whether Rivers did. **See Interest of D.J.K.**, 303 A.3d 499, 505 (Pa. Super. 2023) (citation omitted) (stating a victim's allegations of sexual assault against an unrelated individual in no way exculpates the person charged with sexual assault, and declaring the Rape Shield Law "is intended to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants.").[10]

In his fourth claim, Rivers argues the trial court erred by denying his pre-trial motion to quash the charges because the Commonwealth failed to establish a *prima facie* case at the preliminary hearing.[11] **See** Rivers's Brief at 24-25. This claim is waived because Rivers was found guilty at trial. **See Commonwealth v. Lee**, 662 A.2d 645, 650 (Pa. 1995) (holding that an adjudication of guilt beyond a reasonable doubt "renders moot any allegation that the Commonwealth failed to establish a *prima facie* case" at the pre-trial

---

[10] In any event, despite the clear inadmissibility of any evidence concerning the victim's sexual history and over the Commonwealth's objection, the trial court **did allow** questioning about possible sexual contact with KO and Mir. **See** N.T., 8/29/23, at 67-68, 84, 87, 89-90, 108-09.

[11] We note in support of this claim, Rivers cites, *inter alia*, trial testimony. **See** Rivers's Brief at 25 n.57. Because Rivers asserts the denial of a pre-trial motion to quash, the cited evidence is irrelevant to his claim.

stage); ***Commonwealth v. McIntyre***, 333 A.3d 417, 440 (Pa. Super. 2025) (internal citation and quotations omitted) ("once a defendant is found guilty after trial, any alleged defects or errors at the preliminary hearing stage are rendered moot").

In his final issue, Rivers argues the trial court improperly admonished defense counsel and showed bias toward the Commonwealth and the victim. ***See*** Rivers's Brief at 26-29. In reviewing Rivers's claim, we are guided by the following principles:

> Every unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel, does not compel the granting of a ***new trial. A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial***. Moreover, it must be determined from all the circumstances whether a remark has a prejudicial effect; there is no fixed rule applicable to every case. An accepted guide in determining prejudicial effect is that, if the remark may be said with fair assurance to have had but a slight effect upon the jury, if any at all, and one is not left in doubt that it had no substantial influence in the case, it will not vitiate an otherwise fair trial.

***Commonwealth v. Sullivan***, 820 A.2d 795, 800 (Pa. Super. 2003) (citation omitted). ***Accord Commonwealth v. Chmiel***, 889 A.2d 501, 528 (Pa. 2005) (stating "[m]ere error in the abstract is not sufficient to warrant a retrial").

Rivers claims the court admonished counsel for purposes other than to maintain the order and dignity of the proceedings. ***See*** Rivers's Brief at 28. However, as the trial court explained:

> During cross-examination, defense counsel repeatedly asked the [victim] about the events in question and inconsistencies between

her testimony and other evidence. Defense counsel's questioning went beyond zealous advocacy. It was tantamount to badgering and resulted in the [victim] breaking down in tears. Outside of the witness's presence[,] the court advised defense counsel that asking the same question multiple times in that manner that caused a sexual assault complainant to break down in tears on the witness stand was objectionable and distasteful. The court did not admonish counsel because of malice or ill will toward defense counsel, but to maintain the order and dignity of the proceedings.

Trial Court Opinion, 11/7/24, at 10 (record citation omitted), citing **Commonwealth v. Jackson**, 299 A.2d 222 (Pa. 1973). In **Jackson**, the Supreme Court held the trial court did not err when it admonished defense counsel after examining a witness's scars and making improper gestures. Rivers attempts to distinguish this case from **Jackson**, because "[t]he record does not contain any evidence [d]efense [c]ounsel made any improper gestures, raised his voice, and/or questioned the witness about imperfections or scars on her body."[12]  Rivers's Brief at 28. This purported distinction is unavailing. **Jackson** is analogous insofar as an attorney showed insensitivity to a witness/victim and the trial judge responded. Moreover, whereas **Jackson** involved a jury, this was a non-jury trial and the law presumes a trial court sitting as fact finder ignores prejudicial evidence. **See Commonwealth v. Irwin**, 639 A.2d 52, 54 (Pa. Super. 1994).

Considering all the circumstances, and upon review of the trial court record, we do not find the court's comments prejudicial. The trial court's

---

[12] We note Rivers does not cite to any case law to demonstrate prejudice; he simply aims to distinguish the trial court cites.

warning was in response to the victim breaking down and crying. There was no risk of these comments affecting a jury. Therefore, these comments do not warrant a new trial.

Rivers additionally claims the court showed bias toward the victim. *See* Rivers's Brief at 28-29. The trial court explained:

> Over the course of several hours, the [victim] related her story to the court and was subject to extensive cross-examination by defense counsel. At various points during the proceedings, the [victim] was confused by some of the questions and on multiple occasions broke down in tears, causing the proceedings to come to a halt. The court's comforting statements to the [victim] were merely attempts to calm an upset witness so the trial could proceed without further interruption.

Trial Court Opinion, 11/7/24, at 10.

Rivers characterizes these statements as "impermissible judicial intervention" and asserts an extreme danger the finder of fact would be influenced by the court's statements. *See* Rivers's Brief at 28-29. Because the court was the finder of fact, the influence argument is meritless. Further, Rivers does not explain *why* the court's statements to the victim constituted "impermissible judicial intervention" and additionally fails to explain what "impermissible judicial intervention" means in this context; thus, this conclusory statement without further context fails.

This Court has no obligation to formulate an appellant's arguments for him. *See, e.g.*, *Commonwealth v. Reich*, 340 A.3d 997, 1011 n.8 (Pa. Super. 2025). When a brief "fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other

meaningful fashion capable of review, that claim is waived." ***Commonwealth v. Armolt***, 294 A.3d 364, 377 (Pa. 2023) (citation omitted). Indeed, "lawyers who omit reasons, or provide only scant ones, in their efforts to secure relief for their clients should know very well that they are proceeding at the risk of waiver." ***Commonwealth v. Bishop***, 217 A.3d 833, 844 (Pa. 2019). Rivers makes no reference to the record anywhere other than in his 1925(b) statement, in direct violation of Pa.R.A.P. 2119.[13] Therefore, because Rivers fails to develop this issue in any meaningful way capable of review, this claim is both waived and meritless.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/31/2025

---

[13] "If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears." Pa.R.A.P. 2119(c).